TEAMSTERS, CHAUFFEURS, WARE-
HOUSEMEN AND HELPERS, LOCAL
UNION 222 and Local Union 976, Plain-
tiffs and Respondents,

v.

MOTOR CARGO, a corporation,
Defendant and Appellant.

No. 13679.

Supreme Court of Utah.

Dec. 31, 1974.

Gary A. Frank of Richards & Richards, Salt Lake City, for appellant.

A. Park Smoot, Murray, for respondents.

ELLETT, Justice:

This case is unusual in that the plaintiff union, looking out for the welfare of its members, demands arbitration because the employer (defendant) is offering its employees a better health and accident policy than it is required to furnish pursuant to the collective bargaining agreement.

It would appear from matters de hors the record that when the agreement was entered into, the defendant had a policy of health and accident and the union also had one; that each employee might choose the coverage he desired; that the cost to the

defendant was $31.16 per month for each employee and that the defendant promised to pay that amount to the company which the union was sponsoring; that the defendant further promised to pay for the second year the sum of not to exceed $33.56 and for the third year not to exceed $36.06 to the company sponsored by the union for each employee if these amounts were necessary to maintain the same benefits as were covered at the time of the agreement.

There is no claim made that the union-sponsored coverage is not the same as it was. The grievance comes about because the defendant's insurance carrier raised the rates to $41.24 per employee per month and the defendant changed its coverage to Blue Cross-Blue Shield.

All employees were given the opportunity again to accept either the Blue Cross-Blue Shield coverage or the original union-sponsored coverage. Every employee knew that there was to be a change of coverage in July, and the new coverage became effective on August 1. On September 24 following, the union claimed discrimination and demanded arbitration. The employer refused to arbitrate for two reasons: (1) There is nothing to arbitrate and (2) the demand for arbitration was not timely made.

The union then filed a complaint seeking to compel arbitration. A copy of the collective bargaining agreement was attached to the complaint. Subsequently, an amended complaint was filed, which was complete in and of itself. In it no reference was made to the former complaint nor was a copy of the agreement attached thereto.

■ The law is overwhelming to the effect that when an amended complaint, complete in and of itself, is filed, the former complaint is functus officio and cannot be used for any purpose. [1]

When the case came to trial, the following proceedings took place:

The Court: What are we going to hear?

Mr. Smoot: Your Honor, would it help if I gave a brief statement?

The Court: The case isn't at issue. There is no answer filed.

Mr. Frank: Your Honor, we filed an answer the first part of this week. I brought it down personally Tuesday because of a holiday Monday.

\* \* \* \* \* \*

The Court: What is the matter with having an arbitrator appointed?

\* \* \* \* \* \*

The Court: How long is it going to take if you try it here?

Mr. Frank: Less than half a day.

The Court: I don't know what the issues are with no answer.

Mr. Smoot: Why don't we appoint an arbitrator like they want?

\* \* \* \* \* \*

The Court: What is the matter with appointing one now?

\* \* \* \* \* \*

The Court: All right. Now, suppose I allow it, what are we going into here?

Mr. Smoot: That is what I would like to say something about. It seems to me there are two real issues. One, is there a grievance that the union has here with the company? We say there isn't a grievance [2] because of Article 17. It says:

"The Company will continue the present health and welfare insurance program during the term of this agreement."

\* \* \* \* \* \*

The Court: What about this thirty days? That is what I am interested in.

Mr. Frank: I think that is the nitty gritty of the case.

---

1. See cases collected in West Publishing Company Digest under Pleading, ■

2. Counsel undoubtedly meant to say, "We say there is a grievance . . . ."

Article 20 states arbitration may be applied under certain circumstances. But in Article 20:

". . . and then only when arbitration has been requested in a timely manner within thirty calendar days of the original event of the grievance."

It does not say, "when the union knows about it." It says, "within the original event of the grievance."

The Court: If they commit something and the union does not find out about it, doesn't the time run from when they know?

\*    \*    \*    \*    \*    \*

The Court: I will hear evidence on that. I am not prepared to go ahead other than on that one thing, about ordering an arbitrator.

\*    \*    \*    \*    \*    \*

Mr. Smoot: I will call Mister—Your Honor, we have a witness on this matter of increased benefits, and he has another very pressing appointment today, and if there isn't going to be an issue, may he be excused?

The Court: There isn't going to be an issue today. If we can't solve this thing, you come back Monday.

The agreement was not introduced in evidence, and since the original complaint had no function, there was no evidence in the record which would enable the court to rule as he did. Also despite his statement that the only thing he would hear was the question of whether the demand for arbitration was timely made, the court proceeded to find that a copy of the agreement. was attached to the complaint, and he set forth the language of Article 17, Section 2, therein. He also found that certain employees expected the union plan to remain the same during the life of the contract and that the employer had materially and substantially increased the benefits of the company plan and that "on or about October 9, 1973, plaintiffs submitted to defendant in writing, a statement of the facts supporting the grievance, and indicating that the matter be resolved by arbitration . . . ." The court further found that the grievance occurred when the officials received notice thereof, to wit, September 17, 1973.

Since the collective bargaining agreement was not properly before the court, he could not properly make the findings which were made. Even if the agreement had been in evidence, he could not find that there was cause for a legitimate call for arbitration. All that the contract called for was that the employer pay not to exceed a certain amount to keep the benefits of the union-sponsored insurance as they were. There is no claim made that such benefits were not as they were at the time of the agreement.

It appears to us that the union has nothing to complain about in this matter. Its members could have availed themselves of a better health plan by signing a card. That some of the members did so is no discrimination. Apparently what the union wants is for the employer to pay more money to the union-sponsored insurance plan contrary to the collective bargaining agreement.

The trial court also erred in holding that the demand for arbitration was timely made. What he is holding is that an event which is arbitrable does not occur until the union officials digest it and decide whether or not they will be affected thereby. In this case the change-over occurred on August 1. About 69 days later the union demanded arbitration.

The judgment of the trial court is reversed, and the case is remanded with directions to dismiss the plaintiffs' action with prejudice. Costs are awarded to the appellant.

CALLISTER, C. J., and CROCKETT, HENRIOD and TUCKETT, JJ., concur.